# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:08-mj-726-GWF |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| LORA A. FRENCH, ) | |
| ) | **Motion for Discovery - #20** |
| Defendants. ) | |

This matter is before the Court on Defendant Lora French's Motion for Discovery (#20), filed on February 12, 2010; the Government's Response to Motion for Discovery (#21), filed on March 1, 2010; Defendant's Reply to Government's Motion for Discovery (#24), filed on March 11, 2010; and the Government's Sur-Reply in Opposition to Defendant's Motion for Discovery (#25), filed on March 16, 2010. The Court originally scheduled a hearing on Defendant's motion for March 10, 2010 with trial to follow on April 15, 2010. *Minute Order (#22).* Apparently due to a misunderstanding of the scheduling order, Defendant's counsel did not appear for the motion hearing on March 10th and the Court rescheduled the hearing to March 18, 2010. *Minute Order (#22).* The Court heard argument on this motion on March 18, 2010.

## BACKGROUND

The Complaint (#1) in this case was filed on December 2, 2008. Defendant Lora French is charged in Count One with operating a motor vehicle under the influence of alcohol in violation of 36 C.F.R. §4.23(a)(1) and in Count Two with operating a motor vehicle with a blood alcohol content of 0.08 grams or higher in violation of 36 C.F.R. §4.23(a)(2). She is also charged in Count Three with failure to obey a traffic control device in violation of 36 C.F.R. §4.12. Ms. French

1  made her initial court appearance in this case on February 10, 2009 at which time she pled not
2  guilty and trial was set for July 1, 2009. *Minutes of Proceedings (#7).*  The trial was continued on
3  several occasions by stipulation of the parties and on one occasion by the court. Defendant's
4  motion for discovery, filed on February 16, 2010, requests four things:

   1.   The source code for the Intoxilyzer 5000EN breath machine;
   2.   A copy of the  Intoxilyzer 5000EN operator's manual; and
   3.   The source of the Government's witness Dana Russell's opinions:
        a.   That Dr. Dubowski's 1100 1 breath/blood ratio was derived
             from dogs or other animals,
        b.   That peak absorption of alcohol occurs twenty (20) minutes after the
             person's last drink, and
        c.   Documentation that the Intoxilyzer 5000EN operates in
             seconds.

Ms. Russell is a trained forensic analyst employed by the Las Vegas Metropolitan Police Department.  Ms. Russell regularly appears as a witness for the United States in federal DUI prosecutions in this District.  As part of her job duties, Ms. Russell periodically inspects and calibrates the National Park Service's Intoxilyzer 5000EN breath machine located at the ranger station in the Lake Mead National Recreation Area.  She also regularly testifies in regard to whether the breath machine was properly calibrated at the time the test was conducted and whether the blood/alcohol results from the machine appear to be valid.  In connection with this motion, the Court is also informed that Ms. Russell provides training to National Park Service rangers in the operation of the Intoxilyzer 5000EN machine.

During the hearing, Defendant's counsel stated that Ms. Russell has provided him with the information requested in items 3.a. and b. above.  Therefore, the issues remaining for decision are Defendant's motion for production of the source code for the Intoxilyzer 5000EN, the operator's manual for the Intoxilyzer 5000EN and documentation that the Intoxilyzer 5000EN operates in seconds.  The Government opposes Defendant's motion on the grounds that the information and documents requested by Defendant are irrelevant.  The Government also opposes the motion on the

ground that it does not have possession, custody or control of the Intoxilyzer 5000EN source code which is the property and proprietary information of the machine's manufacturer CMI, Inc.  The Government also states that it does not have possession, custody or control of the Intoxilyzer 5000EN operator's manual, although it acknowledges that Ms. Russell possesses a copy.  The Government also suggests that the operator's manual is confidential, proprietary information of CMI, Inc.  The Government contends that whether the Intoxilyzer 5000EN operates in seconds is not an issue in this prosecution.

## DISCUSSION

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides that upon a defendant's request, the government must permit the defendant to inspect and copy books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody or control and (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief; or (iii) the item was obtained from or belongs to the defendant.  Rule 16(a)(1)(F) also provides that a defendant is entitled to inspect and copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if the item is within the government's possession, custody or control and the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Rule 16 does not obligate the prosecution to turn over materials that are not within its possession, custody or control. *United States v. Dominguez-Villa*, 954 F.2d 562, 565 (9th Cir. 1992); *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir.1991).  In this regard, the government is generally under no obligation to produce documents that are in the possession or control of state officials. *Id.  See also United States v. Chavez-Vernaza,* 844 F.2d 1368, 1375 (9th Cir.1987) ("the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control").  The prosecutor may, however, be required to produce documents or things that she has knowledge of and access to.  The prosecutor is deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant. *United States v. Bryan*, 868 F.2d 1032,

1036 (9th Cir. 1989). Such control may also extend to state law enforcement personnel who participate in the federal investigation or prosecution and who are under the control and supervision of the federal prosecutor or law enforcement officers.

The defendant is also required to make a prima facie showing that the requested documents are material. *United States v. Jack*, 257 F.R.D. 221, 228 (E.D.Cal. 2009), citing *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990); *United States v. Little,* 753 F.2d 1420, 1445 (9th Cir.1984) and *United States v. Cadet,* 727 F.2d 1453, 1468 (9th Cir.1984). *Jack* further states:

> The materiality requirement, however, is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that ... the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Liquid Sugars, Inc.,* 158 F.R.D. 466, 471 (E.D.Cal.1994). "[R]equests which are designed to generally cast for impeachment material ... are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." *Id.* at 472.

257 F.R.D. at 229, quoting *United States v. Bergonzi,* 216 F.R.D. 487, 501 (N.D.Cal. 2003).

    **1.**    **Defendant's Motion for Production of the Intoxilyzer 5000EN Source Code.**

The only case cited by either party regarding the Government's obligation to produce the Intoxilyzer source code is *State v. Underdahl (Underdahl II)*, 767 N.W.2d 677 (Minn. 2009), in which the Minnesota Supreme Court discussed whether the source code is relevant or material to the preparation of the defense. In a preceding case, *In re Comm'r of Public Safety (Underdahl I)*, 735 N.W.2d 706, 712 (Minn. 2007), the Minnesota Supreme Court had determined that the state had possession or control of the source code because the Commissioner of Public Safety had an agreement with the Intoxilyzer 5000EN's manufacturer which gave the Commissioner access to the source code. Based on that earlier decision, *Underdahl II* held that the state could be required to produce the source code if the defendant made a sufficient showing that the information is relevant to the guilt or innocence of the accused.

*Underdahl II* dealt with two underlying prosecutions in which the defendants moved for production of the Intoxilyzer source code. In one of the cases, the defendant's motion contained no information or supporting exhibits to demonstrate the relevance of the source code to his defense.

4

The court held that this was insufficient to justify an order requiring the state to produce the source code and reversed the trial court's order requiring the state to do so. In the other case, the defendant submitted a memorandum and nine exhibits to support his request for the source code. This included written testimony by a computer science professor which explained the source code's use in voting machines and its importance in finding defects and problems in those machines. Defendant also provided an exhibit regarding his efforts to obtain the source code from the state and CMI and a report prepared in a New Jersey case about the reliability of the breath test machine and the variety of defects that could impact the test results. Based on this evidence, the court held that the trial did not abuse its discretion in ordering the state to produce the source code. In *State v. Garberg,* 2010 WL 772622 (Minn. App., decided March 9, 2010) at *3, the Minnesota Court of Appeals recently followed *Underdahl II* in affirming the trial court's denial of defendant's pretrial motion for production of the Intoxilyzer source code because defendant submitted no evidence in support of his discovery motion.

Other state courts have also recently addressed the discoverability of source codes for Intoxilyzer machines. These cases hold that the state cannot be ordered to produce the Intoxilyzer source code because it is not in the state's possession, custody or control. *State v. Bernini (Bernini I)*, 207 P.3d 789, 791 (Ariz. App. 2009); *Hills v. State*, 663 S.E.2d 265 (Ga.App. 2008); *People v. Robinson*, 53 A.D.3d 63, 74, 860 N.Y.S.2d 159, 167 (2008); and *City of Fargo v. Levine*, 747 N.W.2d 130 (N.D. 2008). The North Dakota Supreme Court's decision in *City of Fargo v. Levine* provides the most thorough analysis of Rule 16(a)(E) and (F)'s requirement that the prosecuting authority be in possession or control of the Intoxilyzer source code in order for it to be subject to production. The court states:

> Before discovery will be ordered, the defendant must make a prima facie showing that the requested evidence is within the possession, custody or control of the government. *See* N.D.R.Crim.P. 16(a)(1)(D) and (E); *see also* Fed.R.Crim.P. 16(a)(1)(E) and (F); *United States v. Rosenberg,* 10 F.R.D. 521, 523 (D.N.Y.1950) (requiring a showing in the defendant's motion to compel that the Government had obtained documents). If the defendant makes a prima facie showing, the Government must disclose the evidence or, if the Government maintains the evidence is unavailable, it must make "every effort to account for their whereabouts and provide defendant with a written explanation for the same." *United States v.*

> *Konefal,* 566 F.Supp. 698, 707-08 (D.N.Y.1983). In effect, the burden shifts to the Government to show the evidence is not in its possession, custody or control. *United States v. Bailleaux,* 685 F.2d 1105, 1113-14 (9th Cir.1982).
>
> Federal courts have applied this procedure not only to evidence alleged to be in the actual possession of the prosecution but also to evidence the prosecution could have obtained through reasonable diligence. *Bailleaux,* at 1113-14 (holding that after defendant's prima facie showing, disclosure is required if the existence of the evidence "is known or could have become known to the attorney for the Government through the exercise of reasonable diligence"). Our case law echoes this position: "Limiting application of Rule 16 to materials in the actual possession of the prosecution 'unfairly allows the prosecution access to documents without making them available to the defense.' " *Ramstad,* 2003 ND 41, ¶ 19, 658 N.W.2d 731 (quoting *United States v. Robertson,* 634 F.Supp. 1020, 1025 (E.D.Cal.1986), *aff'd,* 815 F.2d 714 (9th Cir.1987)).
>
> Here, the district court concluded, "[t]his item is not in the possession, custody or control of the City of Fargo, [and] it will not be with any sort of diligence." The district court's conclusion here stands in contrast to *In re Comm'r of Pub. Safety* [*Underdahl I*]*,* 735 N.W.2d 706, 713 (Minn.2007), where the source code for operation of the Intoxilyzer 5000 was discoverable. The Minnesota district court ordered discovery from the state after concluding the state owned the source code. *Id.* at 709. The conclusion was based on evidence that the code was created exclusively for Minnesota and on an "ownership of copyright" provision in Minnesota's contract documents with the manufacturer. *Id.* at 708-09.
>
> In our case, Levine offered no evidence that the Intoxilyzer software was created for Fargo or that Fargo owned the code. Nor did he provide evidence that Fargo was otherwise in possession or control of the computer code. In place of such evidence, Levine argued Fargo's possession and control of the Intoxilyzer machine was sine qua non possession of the source code. We reject the argument, as apparently did the district court, given the lack of proof showing Fargo had possession, custody or control of the source code.

*Levine*, 747 N.W.2d at 133-134.

Courts have also denied motions for production of the source code based on the defendant's failure to make a sufficient showing that the source code is relevant and material to the defense. *See State v. Bernini (Bernini II)*, 218 P.3d 1064, 1069 (Ariz. App. 2009); *State v. Bastos*, 985 So.2d 37 (Fla.App. 2008); and *Commonwealth v. House*, 295 S.W.3d 825 (Ky. 2009). These courts appear to take a stricter view than *Underdahl II* as to what evidence or information is sufficient to

show the materiality of the source code.[1] In *State v. Bernini (Bernini II)*, the court held that defendants failed to demonstrate during a two day evidentiary hearing that any alleged defects or anomalies in the Intoxilyzer machines affected the test results in their cases. The court held that defendants were not entitled to obtain the Intoxilyzer source code merely in the hope that something would turn up. In *State v. Bastos*, the defendants presented expert testimony at an evidentiary hearing regarding the "false positive" problems inherent in Intoxilyzer machines. The state did not dispute that the Intoxilyzer 5000 can produce false positives due to the presence of certain "interferents" under the circumstances described by defendants' experts. In holding that defendants were not entitled to obtain a subpoena to require CMI representatives to testify at trial and to produce the Intoxilyzer source code, *Bastos* states:

> After careful consideration, we conclude that the present record does not support the conclusion that the proposed testimony and documents are "material" for purposes of the Uniform law. The defendants are certainly entitled to investigate their case. They have retained two experts, Dr. Rose and Dr. Harley Myler, who are highly knowledgeable about the Intoxilyzer 5000. The defendants are entitled to bring forth testimony, or conduct testing, to demonstrate that interferents yield false positives or skew the machine's readings.
>
> However, we cannot accept the proposition that simply because a piece of testing equipment is used in a criminal case, it follows that the source code for its computer must be turned over. There would need to be a particularized showing demonstrating that observed discrepancies in the operation of the machine necessitate access to the source code. We are unable to see that any such evidence was brought forth in the evidentiary hearing below.

*Bastos*, 985 So.2d at 42-43.

In *Commonwealth v. House*, 295 S.W.3d 825 (Ky. 2009), the Kentucky Supreme Court affirmed the trial court's order quashing a subpoena *duces tecum* issued to CMI to produce the source code for the Intoxilyzer 5000EN. (The trial court had previously denied the defendant's motion to compel the state to produce the source code on the ground that it did not have possession or control of the Intoxilyzer source code.) The Kentucky Supreme Court noted that Kentucky has

---

[1] The court in *Underdahl II* reviewed trial court orders requiring the production of Intoxilyzer source codes under an abuse of discretion standard.

adopted Federal Rule of Criminal Procedure 17(c), which the United States Supreme Court in *United States v. Nixon,* 418 U.S. 683, 698-99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), stated was not intended to serve as a discovery device for criminal cases, but was meant "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *House*, 295 S.W.2d at 828. As the Kentucky court noted, *Nixon* adopted a four-part test for determining when a movant is entitled to the production of subpoenaed materials prior to trial. The movant must show that (1) the documents are evidentiary and relevant, (2) are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the movant cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a general fishing expedition. *House* states that "federal courts applying this test have held that the relevancy and no-fishing-expedition prongs are not satisfied by subpoenas grounded in nothing more than conjecture or mere hope that the subpoenaed material will include admissible evidence (citations omitted)." *House,* at 828.

In holding that the trial court correctly quashed the subpoena for the Intoxilyzer source code, *House* stated:

> A subpoena *duces tecum* under our rule may be quashed if it is "unreasonable or oppressive," and we agree with the federal courts that it is unreasonable if, as in this case, the party demanding production can point to nothing more than hope or conjecture that the subpoenaed material will provide admissible evidence. House, as noted above, sought CMI's Intoxilyzer code hoping that his expert might discover flaws in it, but he presented no evidence whatsoever suggesting that the code was flawed. His subpoena was nothing but a classic fishing expedition, which RCr 7.02(3) does not allow. The Court of Appeals erred by ruling otherwise.

*Id.*, 295 S.W.3d at 828-29.

In this case, the parties stipulated at the hearing that the Government does not have a contractual relationship with CMI, Inc. which gives the Government the right to obtain the Intoxilyzer 5000EN source code. Accordingly, Defendant's motion for production of the source code must be denied on this ground alone. Secondly, Defendant has failed to provide any evidence that would satisfy her duty to make a *prima face* showing of materiality. At the hearing,

Defendant's counsel requested leave to obtain evidence or information to support his request for disclosure of the Intoxilyzer 5000EN source code. Having considered this request, the Court denies it for the following reasons:

First, Defendant has had over a year in which to prepare a properly supported discovery motion. Defendant has not demonstrated good cause to now permit her to attempt to produce evidence in support of her position which should have been included in the motion. Second, there is nothing to suggest that any actual defects or anomalies in the Intoxilyzer 5000EN machine affected the breath test conducted on Ms. French. Rather, it appears only that Defendant's counsel may attempt to gather some general information to suggest that the source code may show that defects or anomalies could exist. As the foregoing cases state, this is not sufficient to establish the materiality of the source code. Finally, even if Defendant could make a *prima face* showing of materiality, she cannot show that the Government is in possession, custody or control of the source code. Accordingly, Defendant's motion for production of the source code for the Intoxilyzer 5000EN is denied.

### 2. **Defendant's Motion for Production of the Intoxilyzer 5000EN Operating Manual and For Documentation that the Intoxilyzer 5000EN Operates in Seconds.**

Defendant requests production of the operating manual for the Intoxilyzer 5000EN without specifying any subject matter or information in the manual that is relevant or potentially material to her defense in this case. Defendant's motion, in fact, states only that she "needs a copy of the Operator's Manual for effective cross examination." Unlike the source code, Ms. Russell possesses a copy of the operator's manual for the Intoxilyzer 5000EN. Ms. Russell maintains and calibrates the National Park Services' Intoxilyzer 5000EN. She also provides training to Park Service Rangers in its use. Ms. Russell has testified in the past, and will testify in this case, on behalf of the Government in regard to the Intoxilyzer 5000EN. The Court therefore finds that the Government has control of or access to the operator's manual through its agent and witness, Ms. Russell, and therefore may be required under Rule 16(a)(1)(E) to produce material portions of the manual. Although the Government argues that the operator's manual is proprietary or trade secret information of CMI, Inc., it has not offered any evidence to support that proposition.

The Court will not, however, order production of the entire operator's manual. Defendant's counsel is familiar with Ms. Russell's testimony in DUI prosecutions in Federal District Court and in the Nevada state court. He can therefore presumably identify the subjects in the operator's manual that are likely to be relevant to Ms. Russell's or the ranger's expected testimony in this case and which may potentially be used to cross-examine them. Defendant should refine and narrow her request to the Government for relevant and material provisions of the operator's manual. If the parties cannot reach agreement on this matter, then Defendant may renew her motion for those portions of the manual that are relevant and material to this case.

Finally, Defendant has not shown that documentation that the Intoxilyzer 5000EN operates in seconds is relevant and material to the issues in this case. Rule 16(a)(1)(E) is not a vehicle for a defendant's attorney to obtain documents or information that have no bearing on the subject case, but which counsel may use in other pending or future DUI prosecutions involving the Intoxilyzer 5000EN. Therefore, Defendant's request for such documentation is denied. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Discovery (#20) is **denied** without prejudice to Defendant's right to request relevant and material portions of the operator's manual for the Intoxilyzer 5000EN from the Government and, if the parties cannot reach agreement, to renew her motion for such portions of the manual.

DATED this 22nd of March, 2010.

_George Foley Jr._
GEORGE FOLEY, JR.
United States Magistrate Judge