UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>LORA A. FRENCH,<br><br>      Defendants. | Case No.  2:08-mj-726-GWF<br><br>**DECISION AND VERDICT** |

   Defendant Lora French is charged in Count One of the Complaint in this case with operating a motor vehicle while under the influence of alcohol in violation of 36 C.F.R. §4.23(a)(1); in Count Two with operating a motor vehicle with a blood alcohol content of 0.08 grams or higher in violation of 36 C.F.R. §4.23(a)(2); and in Count Three with failure to obey a traffic control device in violation of 36 C.F.R. §4.2, to-wit: failing to make a complete stop at two posted stop signs.  The case was tried before the Court on April 15 and 16, 2010.  Prior to the commencement of trial, Defendant's counsel made an oral motion to suppress evidence relating to the charges in Counts One and Two on the grounds that the National Park Service Ranger did not have probable cause to stop Defendant's vehicle.  The Court consolidated the evidentiary hearing on Defendant's motion to suppress with the trial on the charges alleged in the Complaint.

   **1.**  **Legality of the Stop**

   Under the Fourth Amendment, a law enforcement officer may stop a motor vehicle if he has probable cause to believe that the operator has committed a traffic law violation. *United States v. Choudhry*, 461 F.3d 1097, 1100  (9th Cir. 2006), citing *Whren v. United States*, 517 U.S. 806, 819 116 S.Ct. 1769 (1996), *United States v. Willis*, 431 F.3d 709, 714-17 (9th Cir. 2005).  The court may

not invalidate an otherwise lawful stop on grounds that the traffic violation was a mere pretext for the officer's subjective desire to investigate for other criminal activity. *Whren, supra.* The Government is required to prove probable cause by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974).

National Park Service Ranger Fletcher Ogg testified that on May 26, 2008 at approximately 1:00 a.m., he was in his patrol vehicle which was parked in the upper parking lot at the Callville Bay Marina in the Lake Mead National Recreational Area. His vehicle was facing east toward the Lake and the boat launch ramp. The Marina building, which includes a lounge where alcoholic beverages are served, was located to the northeast of Ranger Ogg's position. Ranger Ogg testified that from his vantage point, he could observe the launch ramp, the parking lots and roadways in the vicinity of the Marina. He testified that he observed an automobile traveling west on the road that comes from the Marina building. This road was north of his position. Ranger Ogg testified that the automobile approached a T-intersection with a north-south road. There was a stop sign at this intersection which requires westbound vehicles to stop before turning left or right. Ranger Ogg testified that the automobile made a left turn at the intersection without stopping and without displaying a left turn signal. He acknowledged that there were no other vehicles in the immediate vicinity when the automobile made the left turn. Ranger Ogg was unable to estimate the speed of the automobile, but stated that the driver was able to make the turn without slowing down, indicating that the automobile was traveling at a relatively slow speed. The automobile then proceeded south until it reached another intersection where it made a right turn without stopping or signaling. Ranger Ogg believed at the time of the incident that there was also a stop sign at this intersection which required the automobile to stop before turning right. He visited the area prior to trial, however, and observed that there is no stop sign at this second intersection. Through inquiry, he also determined that there was no stop sign at this intersection on May 26, 2008.

Ranger Ogg followed the automobile and observed it again turn to the right in a northerly direction as it proceeded into the Callville Bay trailer park area. Ranger Ogg thereupon stopped the automobile which was operated by Defendant Lora French who was and is the food and beverage manager at the Callville Bay Lounge. Ranger Ogg testified that he did not know Mrs. French prior

to stopping her automobile.  Based on his observations of Mrs French, her driving behavior, and the results of field sobriety tests which Mrs. French was unable to fully perform or complete, Ranger Ogg arrested her for driving under the influence of alcohol.  An Intoxilyer 5000EN breath test was thereafter administered to Ms. French which indicated that her blood alcohol content was above the legal limit of 0.08 percent.

The defense called Mrs. French's husband, David French, as a witness.  Mr. French testified that he and Lora French are employed by the Callville Bay Lounge and reside in the trailer park located east of the Marina.  He stated that at approximately 9:00 p.m. on May 25, 2008, two park service rangers came into the lounge and stated to those present that the ranger who previously had "jurisdiction" in that area was no longer in charge and that anyone who gets into a golf cart or automobile, presumably after consuming alcoholic beverages in the lounge, would be arrested.  Mr. French did not identify Ranger Ogg as one of these rangers.  Mr. French testified that he and Mrs. French left the lounge to go to their residence at approximately 1:00 a.m.  He drove his golf cart and Mrs. French followed approximately ten (10) feet behind in her automobile.  Mr. French testified he stopped at the stop sign before turning left onto the southbound road and that Mrs. French stopped behind him.  As Mr. French proceeded to make his left turn, he looked behind and observed Mrs. French again stop and activate her left turn signal before turning left.

Mr. French also testified that there were trees along the roads near the intersection which would have obstructed Ranger Ogg's view of the intersection from the upper parking lot.  *See Defendant's Exhibit "A"*.  Mr. French stated that the ranger's view could also have been obstructed if large recreation vehicles (RV's) were parked in the lower parking lot.  Mr. French did not know, however, whether RV's were present on May 26, 2008.   In rebuttal, Ranger Ogg testified that there were no trees at the location described by Mr. French and that his view of the intersection on May 26, 2008 was not obstructed by any vehicles or objects in the lower parking lot.  Ranger Ogg also testified that he did not enter the lounge on the evening or morning of May 25-26, 2008.

As the foregoing summary shows, there is conflicting testimony as to whether the Defendant ran the stop sign or failed to make a left turn signal at the first intersection.  Ranger Ogg's testimony is subject to some doubt based on his location and the direction his vehicle was

facing at the time he allegedly saw Mrs. French's vehicle run the stop sign.  Ranger Ogg was also in error in believing that Mrs. French ran a second stop sign that was subsequently determined not to exist.  He also erred in stating in his report that he stopped Mrs. French's vehicle at 1:17 a.m. Ranger Ogg testified that the stop actually occurred at 1:06 a.m. and that the time recorded in the report was actually the time at which Mrs. French was placed under arrest.  There is also reason to doubt Mr. French's testimony.  First, he has an obvious interest in supporting his wife's defense.  It is also questionable whether Mr. French actually looked back from his vehicle and observed his wife stop and make a left turn signal before making the left turn.  There was also no corroboration, such as photographs, for Mr. French's testimony that Ranger Ogg's view of the intersection was obstructed by trees.  The Court concludes, on balance, that Ranger Ogg's testimony is more credible that Mr. French's testimony.  Accordingly, the Court finds that the Government has met its burden to show by a preponderance of the evidence that Ranger Ogg had probable cause to stop Defendant's vehicle for failing to stop at a posted stop sign in violation of 36 C.F.R. §4.12.

      Because the Court finds, by a preponderance of the evidence that Mrs. French ran the stop sign, it is unnecessary to decide whether Ranger Ogg also had probable cause to stop Defendant's vehicle for allegedly failing to make a turn signal.  The Court will, however, briefly address this issue.  NRS §484.343.1 requires a driver to make a turn signal when turning at an intersection or making a lane change if other traffic may be affected by the movement.  It may be reasonable to infer that other traffic is affected when a driver makes a turn or lane change without signaling on a busy street or intersection.  *See United States v. Dulaney*, 2007 WL 680785 (D. Nev. 2007) (holding that officer had probable cause under NRS §484.343.1 to stop a vehicle that crossed over three lanes of travel on a major thoroughfare at noontime without signaling.)  Such an inference is not reasonable, however, where, as here, there is no reason to believe that other traffic was present or affected by the turn.  *See S.A.S. v. State*, 884 So.2d 1169 (Fla.App. 2004) (construing a substantially identical statute involving a turn made at a T intersection when no other traffic was present).  Because there is no evidence that any other vehicle was or could have been affected when Defendant allegedly made turns without signaling, probable cause did not exist to stop Defendant's vehicle based on a violation of NRS §484.343.1.

**2.     Whether Defendant Operated Her Vehicle While Under the Influence of Alcohol.**

An officer need only have reasonable suspicion that an automobile driver is under the influence of alcohol in order to conduct a field sobriety test. *See Vondrak v. City of Las Cruces*, 2007 WL 3319449 (D.N.M. 2007) *8, *citing Rogala v. Dist. of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998). *See also United States v. Kranz*, 177 F.Supp.2d 760 (S.D. Ohio 2001) and *United States v. Caine,* 517 F.Supp.2d 586, 589-590 (D.Mass. 2007). Like probable cause, reasonable suspicion is based on the totality of the circumstances. The level of proof, however, is less than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585 (1989). In *United States v. Kranz*, 177 F.Supp.2d 760 (S.D. Ohio 2001), the court noted that it is the very nature of circumstantial evidence that one piece of evidence is seldom sufficient for conviction. Rather, it is the combination of pieces of evidence, each of which may individually be consistent with an innocent explanation that may collectively lead to the eventual conclusion of guilt. *Kranz*, 177 F.Supp.2d at 763. *Vondrak, supra,* 2007 WL 2219449 at *8 cites numerous examples of circumstances in which courts have found that the officers had reasonable suspicion to conduct field sobriety tests. A fairly common observation is the odor of alcoholic beverage on the driver, which along with other factors, such as bloodshot eyes, slurred speech or lack of physical balance supports a suspicion that the person is impaired by alcohol.

The results of the field sobriety tests, combined with the officer's other observations may provide probable cause to arrest and may be sufficient to support a conviction for driving under the influence of alcohol in violation of 36 C.F.R. §4.23(a)(1). In upholding a conviction under §4.23(a)(1), the Ninth Circuit in *United States v. Stanton*, 501 F.3d 1093, 1100 (9th Cir. 2007), stated that "[a]lthough any of these factors - singly or collectively - might be explained innocently 'the prosecution need not affirmatively rule out every hypothesis except that of guilt.' (citation omitted)." In *Stanton*, the magistrate judge found defendant guilty even though he sustained an objection to the intoxilyzer test results based on the government's failure to lay a sufficient foundation for what they represented.

. . .

Ranger Ogg testified that after stopping Defendant's automobile, he observed that her eyes were bloodshot and watery, her speech was slurred and there was an odor of alcohol on her breath. He also stated that Mrs. French initially appeared to have some difficulty in locating and producing her license or registration. Mrs. French was wearing a sweater which was arranged in a disorderly manner. He also indicated that Mrs. French attempted to exit her vehicle as soon as he stopped her. Ranger Ogg also considered these observations to be indications of possible impairment. The Court finds that these observations, as a whole, provided the ranger with reasonable suspicion to believe that Defendant was under the influence of alcohol.

The Court also finds that Ranger Ogg has probable cause to arrest Mrs. French based on these observations and the results of the field sobriety tests, including the fact that Defendant was either unable or unwilling to perform or complete the tests. In this regard, Ranger Ogg testified that he was unable to complete the horizontal gaze nystagmus test because Mrs. French was unable to follow the stylus with her eyes without also turning her head. Mrs. French was also unable to complete the walk and turn test and the one leg stand test. While Mrs. French may have been upset or agitated because she believed the ranger did not have a valid basis for stopping her vehicle, her behavior is also consistent with that of a person whose judgment is impaired by alcohol consumption. Ranger Ogg also performed a preliminary breath test with a portable breath test device which indicated that Defendant's blood alcohol content was above the legal limit. Subsequent to Defendant's arrest, an Intoxilyzer 5000EN breath test was administered to her which showed that the percentage of alcohol in her blood was 0.149 and 0.135. These test results were obtained approximately an hour and a half after her vehicle was stopped by the ranger.

## **CONCLUSION AND VERDICT**

In *United States v. Stout*, Case No. 2:09-mj-00146-GWF, 2009 WL 5217047 (D.Nev.), this Court held that in the absence of qualified testimony by an expert relating the intoxilyzer test results back to the time of the stop, a defendant cannot be convicted for a violation of 36 C.F.R. 4.23(a)(2) which prohibits a person from operating a motor vehicle with a blood alcohol content of 0.08 percent or more. As was the case in *Stout,* the Government's forensic analyst, Dana Russell, testified that she is unable to state, on the basis of the intoxilyzer test results, what Defendant's

blood alcohol content was at the time of the stop.  The Government has therefore not proven Defendant's guilt beyond a reasonable doubt on Count Two of the Complaint.  The evidence, as a whole, however, establishes Defendant's guilt beyond a reasonable doubt on Count One of the Complaint charging her with operating a motor vehicle while under the influence of alcohol to a degree that rendered her incapable of safely operating a motor vehicle in violation of 36 C.F.R. 4.23(a)(1).  In this regard, the Court may consider the intoxilyzer test results, together with other evidence, in determining whether the Defendant violated that section of the regulation.  *See United States v. Stout, supra*, at *9 and *10.  Finally, although the Court found by a preponderance of the evidence that Ranger Ogg had probable cause to stop Defendant's vehicle for failing to stop at a stop sign, based on the conflicting testimony, the Court concludes that the Government has not proven beyond a reasonable doubt that Defendant failed to stop at  stop sign as charged in Count Three of the Complaint.  Accordingly,

1. The Court finds Defendant Lora French guilty on Count One of the Complaint charging her with operating a motor vehicle while under the influence of alcohol in violation of 36 C.F.R. §4.23(a)(1).

2. The Court finds Defendant French not guilty on Count Two and Count Three of the Complaint.

**IT IS HEREBY ORDERED** that this matter is set for hearing on **Wednesday, May 5, 2010 at 9:00 a.m.** in Courtroom 3A for sentencing on Count One of the Complaint or for further proceedings in accordance with the decision and verdict rendered herein.

DATED this 22nd day of April, 2010.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge